UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ALFREDO SALDANA, ) | |
| ) | |
| Plaintiff, ) | Case No. EDCV 08-00047 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

      Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

      The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. In an August 2007 written hearing decision that constitutes the Commissioner's final decision, an Administrative Law Judge ("ALJ") found that from March 10, 2004 through the date of his decision, plaintiff had severe musculoskeletal impairments that left him with the residual functional capacity ("RFC") for medium work. The ALJ determined that plaintiff's RFC precluded him from performing his past relevant work, but did not preclude him from performing alternative work available

in significant numbers in the national economy.[AR18-22; JS 2].[1]

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Medical opinion evidence**

Plaintiff contends that the ALJ failed properly to consider the opinions of a treating physician, a nonexamining state agency psychiatrist, and a treating psychiatrist.

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)(citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). A treating physician's opinion

---

[1] Plaintiff filed a prior application for disability benefits. In a written hearing decision dated October 18, 2004, a prior ALJ concluded that plaintiff was disabled for a closed period, from September 1, 2002 until March 9, 2004, due to cervical disc disease resulting in foraminal stenosis and radiculopathy, degenerative disc disease of the lumbar spine with central disc herniation at L4-5, osteoarthritis of the left elbow and bilateral knees, and mood disorder. The prior ALJ determined that plaintiff regained the ability to perform the full range of medium work as of March 9, 2004. [AR 52-53]. Plaintiff's present application alleges that he became disabled on March 10, 2004. [AR 19; JS 2].

is entitled to greater weight than those of examining or non-examining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902, 416.927(d)(2). An examining physician's opinion, in turn, generally is afforded more weight than a non-examining physician's opinion. Orn, 495 F.3d at 631.

When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Orn, 495 F.3d at 631-632; Edlund, 253 F.3d at 1157; Social Security Ruling 96-2p, 1996 WL 374188 SSR 96-2p, 1996 WL 374188, at *1-*2. The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

**Treating physician**

Plaintiff contends that the ALJ failed to consider an October 27, 2004 progress report from Deanice F. Beck, M.D., a specialist in physical medicine and rehabilitation. [See JS 3-6].

Dr. Beck's October 2004 progress report, which appears to have been prepared for purposes of a workers' compensation case, states that plaintiff was last seen in August 2004. Since his last visit, plaintiff had been approved for a left knee brace. Plaintiff complained of "a steady ache" in the left knee and "more problems handling steps. He can feel the knee joint shift." [AR 475]. Objective findings were "left knee tender to palpation over the medial and lateral joint lines. Undersurface of patella tender and increases with patella glide and slide. Increased pain with Lachman."[2] [AR 475].

---

[2] A positive Lachman's test occurs in one of two ways, and pain alone does not qualify as a positive result. First, "with the patient lying supine, the knee flexed to 20 degrees, and the femur held firmly in place, the tibia is pulled briskly forward

Dr. Beck's assessment was "left knee pain." Plaintiff was advised to return in 60 days, keep his appointment to receive a brace "to unload the medial compartment and to stabilize patella," and to take ibuprofen. [AR 475-476]. Dr. Beck described plaintiff's status as "permanent and stationary," but she noted no functional restrictions. [AR 475].

The ALJ did not err in failing to discuss Dr. Beck's October 2004 progress report. Dr. Beck merely noted that plaintiff had left knee pain, and that finding was based on plaintiff's subjective history of knee pain and his subjective symptoms of knee pain and tenderness on physical examination. Dr. Beck said nothing about the severity of plaintiff's knee pain or its effect on plaintiff's ability to work.

Moreover, the ALJ did not deny that plaintiff had some knee pain. He credited reports of the state agency nonexamining physician indicating that plaintiff had severe musculoskeletal impairments including mild-to-moderate degenerative joint disease of the knees, and a report from the Commissioner's examining orthopedist giving plaintiff a diagnosis of bilateral knee strain with chondromalacia (softening of the cartilage in the patella) without radiculopathy. [AR 632, 710, 717]. Both of those physicians opined that plaintiff retained the RFC for medium work. [AR 632, 711]. Accordingly, the ALJ did not err in evaluating plaintiff's knee pain.

**State agency psychiatrist**

Plaintiff contends that the ALJ erroneously failed to consider an October 2003 psychiatric review technique form completed by nonexamining state agency physician Charlotte Bible, M.D. [JS 7-9].

As noted above, plaintiff filed a prior application for benefits. Dr. Bible's October 2003 assessment was obtained for purposes of that application. Another nonexamining physician, L.J. Gottschalk, M.D., affirmed Dr. Bible's assessment on April 7, 2004, pursuant to plaintiff's request for

---

(anteriorly)," and "[t]he tibia moves forward (anterior) to the femur." Second, "with the knee fully extended, the femur is pushed backward (posteriorly) while the tibia is pulled forward (anteriorly)," and "[t]here is no clear end point reached with the knee fully extended. The tibia moves forward (anterior) beyond the line of the femur." Either of these positive signs is significant for a torn anterior cruciate ligament of the knee. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook § 18:4 (4th ed. updated October 2008).

reconsideration of the initial denial of that prior application. [AR 269, 308]. At the administrative hearing level, the prior ALJ found that plaintiff was disabled beginning on September 1, 2002, and that plaintiff regained the ability to perform medium work, and therefore ceased to be disabled, as of March 9, 2004. [AR 52]. Accordingly, the prior ALJ awarded plaintiff a closed period of disability ending on March 9, 2004. [AR 52-53]. Plaintiff did not seek judicial review of that decision, which became the Commissioner's final decision with respect to the period through March 9, 2004.

A final administrative decision that a claimant is not disabled creates a presumption that the claimant retains the ability to work after the date of that final decision. See Schneider v. Comm'r of Social Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Lyle v. Sec'y of Health & Human Srvs., 700 F.2d 566, 567 (9th Cir. 1983). This presumption of "continuing non-disability" may be overcome by a showing of "changed circumstances," by new facts establishing a previously unlitigated impairment or other apparent error in the prior determination, or where the claimant's unrepresented status has resulted in an inadequate record. Lester, 81 F.3d at 827-828; Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). The ALJ concluded that plaintiff had not rebutted the presumption of continuing non-disability. [AR 19].

Dr. Bible's assessment pertains to the previously adjudicated period. Because the prior ALJ finally determined that plaintiff regained the ability to work after the date of Dr. Bible's assessment, that assessment is not relevant to show changed circumstances or other grounds for rebutting the presumption of non-disability. The ALJ was not required to consider that assessment, and he did not err in disregarding it for purposes of determining whether plaintiff became disabled beginning on March 10, 2004.

**Treating psychiatrist**

Plaintiff contends that the ALJ improperly failed to consider a June 2007 report from treating psychiatrist Gana Maria Mody, M.D. [JS 9-12].

In her June 2007 "medication progress note," Dr. Mody, a Kaiser Permanente physician, reported that plaintiff had a history of depression and anxiety. Plaintiff reported that "his anger and sadness fluctuates," and that he had less irritability, occasionally slept well at night, had daytime fatigue, low energy but more motivation to be active, fair concentration, intact appetite, continued to feel "hopeless" and to isolate himself, but he felt slightly less anxious and denied suicidal ideation. [AR 868].

5

1    On mental status examination, Dr. Mody noted that plaintiff displayed plaintiff's attire and eye
2 contact were appropriate. His grooming and hygiene were good. Plaintiff's gait, posture, behavior,
3 motor activity, manner, affect, and speech were normal. He was cooperative. His mood was anxious
4 and depressed. Thought process was coherent, relevant, and logical. He exhibited no suicidal or
5 homicidal ideation and no psychotic or inappropriate thought content. Plaintiff was alert, clear, fully
6 oriented, with memory intact to immediate, recent, and remote recall. His concentration, insight, and
7 reliability were good. His judgment and impulse were unimpaired. [AR 868]. Dr. Mody's diagnostic
8 impression was "Major Depressive Disorder Single Episode, Mild" and "Generalized Anxiety Disorder."
9 [AR 869]. She gave plaintiff a Global Assessment of Function ("GAF") score of 55 [AR 869], denoting
10 moderate symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational,
11 or school functioning, such as having few friends or conflicts with peers or co-workers.[3] Dr. Mody increased
12 plaintiff's Wellbutrin dosage and instructed him to return in one month. [AR 869].

13    The ALJ discussed the treating mental health records from Kaiser Permanente, which include Dr.
14 Mody's reports. [AR 22]. The ALJ remarked that those records showed little objective evidence of a
15 functionally limiting mental impairment, in that

16> [c]oncentration is consistently normal, affect congruent, behavior appropriate, speech and
17> attention normal, thought processes coherent, relevant, [and] logical, manner normal and
18> cooperative, motor activity normal, no deterioration of personal habits and gait and
19> posture normal.

20 [AR 22].

21    Although the ALJ did not identify Dr. Mody by name, that description accurately summarizes
22 Dr. Mody's June 2007 mental status findings. The ALJ rationally concluded that those findings, along
23 with the consultative psychiatrist's opinion that plaintiff had mild depression and mild anxiety causing

---

[3] The GAF score is a "multiaxial" assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning by asking the clinician to rate two components: the severity of a patient's psychological *symptoms,* or the patient's psychological, social, and occupational *functioning*. The GAF score is the lower of the symptom severity score or the functioning severity score. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") Multiaxial Assessment 30, 34 (4th ed. 1994)(revised 2002).

6

1  only slight impairment in his ability to perform work-related activities, established that plaintiff's mental
2  impairment was not severe. [See AR 22, 618-626].  See Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir.
3  2006)(stating that an impairment is not severe if "the evidence establishes a slight abnormality that has
4  no more than a minimal effect on an individual's ability to work").

**Plaintiff's medication**

6  Plaintiff contends that the ALJ failed adequately to consider the implications of Dr. Mody's
7  increasing plaintiff's dosage of Wellbutrin from 100 milligrams qd (every day) to 200 milligrams qd on
8  June 19, 2007. [See AR 868-869]. Plaintiff also argues that "it is possible too that" plaintiff "may have
9  experienced side effects from the use of this medication, which can significantly impact [plaintiff's]
10 ability to perform and sustain full time competitive work." [JS 12].

11 Plaintiff misapprehends Dr. Mody's June 19, 2007 note. At least as early as April 2007, plaintiff
12 had been prescribed bupropion (Wellbutrin[4]) 100 milligram tablets to be taken orally two times daily.
13 [AR 843, 848]. During his June 19, 2007 visit, he told Dr. Mody that he "continued to forget to take
14 the second dosage of Wellbutrin." [AR 858]. Dr. Mody correspondingly noted that plaintiff's current
15 medication was "Wellbutrin 100mg qd." [AR 868]. Her treatment plan was for him to increase his
16 Wellbutrin dosage to "200mg qd," that is, for him to comply with his prescribed dosage. Therefore, the
17 ALJ did not overlook an "increase in dosage," as plaintiff contends.

18 Plaintiff's contention that he "may have experienced side effects" from Wellbutrin is speculative
19 and unsupported by any citation to the record. Dr. Mody's treatment notes do not document
20 complaints of adverse effects from that medication, nor was she deterred by plaintiff's subjective
21 symptoms from continuing to prescribe it. [AR868-869]. During the August 2007 hearing, plaintiff
22 testified that his various medications made him "very tired and sleepy," but he said he did not know
23 which medication made him feel that way. [AR 950-951]. Plaintiff's suggestion that the ALJ erroneously

---

[4] The medication with the brand name Wellbutrin is "bupropion hydrochloride." Physicians' Desk Reference Wellbutrin, 2008 PDR 3270-4600 (Thomson Healthcare, updated August 2008).

7

failed to consider "possible" side effects from Wellbutrin is meritless.[5]

**Absence of vocational expert testimony**

Plaintiff argues that because Dr. Beck noted that plaintiff had left knee pain, and because the ALJ found that plaintiff has severe musculoskeletal impairments, "[c]learly [plaintiff] has numerous nonexertional limitations" necessitating testimony from a vocational expert to establish jobs he can perform. [JS 15].

Pain "can be a non-exertional limitation," but "the fact that a non-exertional limitation is alleged does not automatically preclude application of" the Medical-Vocational Guidelines (the "grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2. Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996). The ALJ properly evaluated Dr. Beck's opinion and the record as a whole, and he permissibly found that plaintiff retained the RFC for the "full range of medium work." [AR 25]. The ALJ noted that the absence of nonexertional limitations authorized him to apply the grids to determine that plaintiff was "not disabled." The ALJ was correct. See Macri, 93 F.3d at 545 (holding that where the claimant failed to establish the existence of a significant non-exertional impairment precluding performance of the full range of light work, the ALJ correctly applied the grids).

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: March 2, 2009

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[5] Plaintiff does not identify any other alleged error in the ALJ's negative credibility determination.